# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

MARGARET JEAN NELSON,

    **Plaintiff,**

  v.                                    Civil Action 2:16-CV-01123
                                            Judge Michael H. Watson
                                            Magistrate Judge Jolson

**COMMISSIONER OF**
**SOCIAL SECURITY,**

    **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Margaret Jean Nelson, filed this action under 42 U.S.C. § 405(g) seeking review of a decision of the Commissioner of Social Security (the "Commissioner") denying her application for supplemental security income. For the reasons that follow, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

### I.    FACTUAL AND MEDICAL BACKGROUND

Plaintiff filed this case on November 28, 2016 (Doc. 1), and the Commissioner filed the administrative record on February 3, 2017 (Doc. 10). Plaintiff filed a Statement of Specific Errors on March 20, 2017 (Doc. 11), and the Commissioner responded on May 4, 2017 (Doc. 12). Plaintiff replied on May 18, 2017. (Doc. 13).

#### A.  Personal Background

Plaintiff was born on September 29, 1968 (Doc. 10-2, Tr. 120, PAGEID #: 157), and alleges a disability onset date of June 5, 2012 (Doc. 10-2, Tr. 105, PAGEID #: 142). She has at least a high school education (Doc. 10-2, Tr. 120, PAGEID #: 157), and work experience as a

1

pottery decorator, cutting vegetables for a produce distributor, and as a retail associate. (Doc. 10-2, Tr. 134–36, PAGEID #: 171–73). Plaintiff's date last insured was June 30, 2016. (Doc. 10-2, Tr. 105, PAGEID #: 142).

### B. Relevant Hearing Testimony

Administrative Law Judge Timothy Keller (the "ALJ") held a hearing on June 23, 2015. (Doc. 10-2, Tr. 129, PAGEID #: 166). During the hearing, Plaintiff testified that she suffers pain in her neck, lower back, and legs, which has worsened since 2012. (*Id.*, Tr. 138, PAGEID #: 175). Plaintiff explained that she has had numerous shots, completed physical therapy, visited chiropractors, and had trigger injections to treat her lower back and neck pain, but that nothing seems to work. (*Id.*). Plaintiff also testified that she has taken pain medication for approximately a year, which "takes the edge off," but its efficacy has lessened. (*Id.*, Tr. 139, PAGEID #: 176).

Plaintiff further testified that she suffers from anxiety and bipolar disorder. (*Id.*, Tr. 144, PAGEID #: 181). She explained that her bipolar disorder causes her to have "good days" and "bad days." (*Id.*, Tr. 145, PAGEID #: 182). Plaintiff stated that her good days occur when she is feeling manic, but that they only occur "maybe once every six months" to a year, whereas her bad days occur nearly every day and are a result of her depression. (*Id.*).

In terms of daily activities, Plaintiff stated that she smoked marijuana up until 2009, and once in 2014 at a party. (*Id.*, Tr. 142, PAGEID #: 179). Plaintiff testified that her bipolar disorder prevented her from keeping up with her housework, spending time with her family, and concentrating on tasks such as reading. (*Id.*, Tr. 145, PAGEID #: 182). She stated that she barely leaves her house. (*Id.*, Tr. 146–47, PAGEID #: 183–84).

### C. Relevant Medical Evidence

#### a. Plaintiff's Physical Impairments

Since at least 2013, Plaintiff has seen a number of physicians for pain management. On May 9, 2013, Dr. Mark Weaver performed a physical examination on Plaintiff and observed no tenderness of Plaintiff's left knee or of any other joints, but noted crepitus of Plaintiff's left knee with "ratchety inconsistency with pain inhibition and giving way in left shoulder muscles and left knee muscles." (Doc. 10-7, Tr. 527–28, PAGEID #: 569–70). Dr. Weaver also noted that there was no impairment of grasp, manipulation, or grip strength of either hand; and straight leg raising was bilaterally negative. (*Id.*, Tr. 528, PAGEID #: 570). X-rays of Plaintiff's lumbar spine showed mild disc space narrowing at L1-2 and L5-S1 but no other abnormalities. (*Id.*, Tr. 517, PAGEID #: 559). X-rays of Plaintiff's left knee were read as normal except for being unable to exclude a suprapatellar bursal effusion. (*Id.*, Tr. 516, PAGEID #: 558).

On July 8, 2013, Plaintiff visited her treating physician, Dr. Paul Mumma with complaints of pain in her thoracic and cervical spine. (*Id.*, Tr. 545, PAGEID #: 587). Throughout the examination, Plaintiff was alert and cooperative. (*Id.*, Tr. 546, PAGEID #: 588). Dr. Mumma opined that Plaintiff's gait and station were normal, and neurological testing was intact. (*Id.*, Tr. 547, PAGEID #: 589). Dr. Mumma further noted that Plaintiff had normal range of motion in all areas of the spine but numerous tender points. (*Id.*). X-rays of Plaintiff's lumbar spine revealed minimal degenerative changes at L5-S1 and L3-4, but X-rays of Plaintiff's thoracic spine were unremarkable and demonstrated no significant degenerative changes. (Doc. 10-8, Tr. 698–99, PAGEID #: 741–42). Plaintiff was diagnosed with anxiety, depression, and spinal arthritis. (*Id.*).

Plaintiff visited additional physicians, as well as the emergency room, several times from

July 2013 to April 2014, with complaints of back pain that radiated into her neck, legs, and arms. (Doc. 10-7, Tr. 579–581, PAGEID #: 621–23; Doc. 10-8, Tr. 702–18, PAGEID #: 745–61). Throughout these visits, Plaintiff consistently demonstrated normal range of motion in her neck (Doc. 10-8, Tr. 703, 705, 716, PAGEID #: 746, 748, 759), and did not demonstrate gross motor or sensory deficits. (*Id.*, Tr. 770, 775, PAGEID #: 813, 818). Multiple physical examinations revealed that Plaintiff was in no acute distress, despite her claims of worsening back pain. (*Id.*, Tr. 770, 775, PAGEID #: 813, 818). X-rays of Plaintiff's cervical spine taken in the emergency room on July 14, 2013, showed mild spondylosis at C3-C4 and mild facet arthropathy at C4-C5. (*Id.*, Tr. 706, PAGEID #: 749). An examination with Dr. Yahya Bakdaliah on April 29, 2014, revealed no tenderness to palpation of Plaintiff's neck and lumbar spine. (Doc. 10-7, Tr. 580, PAGEID #: 622). Dr. Bakdaliah also noted that the lordotic curvature of Plaintiff's lumbar spine appeared "well maintained" and that Plaintiff's muscle strength in her lower extremities was "5/5 with good active range of motion." (*Id.*). Dr. Bakdaliah diagnosed Plaintiff with cervical and lumbar spondylosis, chronic low back pain, and lumbar degenerative disc disease. (*Id.*).

From May 2014 to September 2015, Plaintiff received treatment for her symptoms in the form of cervical blocks to levels C3–C6 (Doc. 10-8, Tr. 733, PAGE ID #: 776), and various joint steroid injections (*id.*, Tr. 719, 843–44, PAGEID #: 801). On August 21, 2014, Plaintiff reported almost 100% relief from her neck pain. (*Id.*, Tr. 748, PAGEID #: 791). On September 4, 2014, Plaintiff reported almost 100% relief from her low back pain. (Doc. 10-7, Tr. 586, PAGEID #: 628). However, almost a year later, on May 5, 2015, Plaintiff was examined by Dr. Courtney Bonner, due to neck pain. (Doc. 10-8, Tr. 807, PAGEID #: 850). Dr. Bonner noted a gait problem and neck stiffness, but X-rays of Plaintiff's spine revealed only mild facet arthritis. (*Id.*, Tr. 807, 812, PAGEID #: 850, 855).

On June 22, 2015, Tami Mohan, a physician assistant ("PA") at Genesis Healthcare System Center for Occupational and Outpatient Rehabilitation, completed a physical capacity evaluation (the "PA assessment") of Plaintiff that was co-signed by Dr. Kocoloski, who performed Plaintiff's spinal injections, and by Plaintiff's physical therapist. (Doc. 10-8, Tr. 804–06, PAGEID #: 847–49). Ms. Mohan concluded that, in an eight-hour workday, Plaintiff could stand one hour total and five minutes at a time, walk one hour total and fifteen minutes at a time, and sit two hours total and fifteen minutes at a time. (*Id.*, Tr. 805, PAGEID #: 848). The PA assessment further stated that Plaintiff could not use her hands for simple grasping, pushing and pulling, or fine manipulation; and that Plaintiff could rarely lift up to ten pounds. (*Id.*). Finally, Ms. Mohan opined that Plaintiff could bend, squat, and climb steps on occasion, but was completely unable to crawl or climb ladders. (*Id.*, Tr. 806, PAGEID #: 949). The only remark Ms. Mohan provided regarding her findings was a note that stated Plaintiff had complained of cervical, thoracic, and lumbar pain. (*Id.*).

### b. Plaintiff's Mental Impairments

Plaintiff also sought professional attention for her various mental disorders since at least 2013. On May 21, 2013, Plaintiff attended a psychological consultative examination with Dr. Sudhir Dubey. (Doc. 10-7, Tr. 535, PAGEID #: 577). At the examination, Plaintiff appeared depressed, although her speech was coherent and her thought processes were logical. (*Id.*, Tr. 538, PAGEID #: 580). Plaintiff did not need simple or multi-part questions repeated and did not appear to have difficulty with comprehension, nor did she exhibit difficulty concentrating. (*Id.*, Tr. 538–39, PAGEID #: 580–81). Plaintiff was diagnosed with cannabis abuse in remission, post-traumatic stress disorder ("PTSD"), and depressive disorder not otherwise specified. (*Id.*, Tr. 540, PAGEID #: 582). Dr. Dubey opined that, in a work setting, Plaintiff would be able to

5

maintain persistence and pace to remember and carry out simple instructions independently. (*Id.*, Tr. 542, PAGEID #: 584). He further opined that Plaintiff would be able to understand, remember, and carry out multi-step instructions independently, but she would be unable to maintain persistence and pace to remember and carry out multi-step instructions due to attention, concentration, and memory problems. (*Id.*, Tr. 541–42, PAGEID #: 583–84). However, Dr. Dubey stated that Plaintiff would be able to perform multi-step tasks with supervision. (*Id.*, Tr. 542, PAGEID #: 584). Finally, Dr. Dubey opined that Plaintiff would only have mild issues dealing with co-workers, supervisors, and work pressure. (*Id.*, Tr. 542–43, PAGEID #: 584–85).

On August 28, 2013, Plaintiff underwent a psychological consultative examination with Dr. Steven Meyer. (*Id.*, Tr. 550, PAGEID #: 592). Dr. Meyer noted that Plaintiff's grooming was unkempt, and that Plaintiff appeared flushed, irritable, and on the verge of tears. (*Id.*, Tr. 552, PAGEID #: 594). Plaintiff showed symptoms of depression and anxiety, and exhibited symptoms of PTSD. (*Id.*, Tr. 552–54, PAGEID #: 594–96). Dr. Meyer opined that Plaintiff had no difficulty understanding simple or moderately complex instructions, and that her abstract reasoning, long-term memory, and general information were average. (*Id.*, Tr. 553, PAGEID #: 595). He further noted that Plaintiff's concentration and persistence were good, and that she worked on tasks "somewhat fast." (*Id.*). Dr. Meyer diagnosed Plaintiff with depressive disorder, PTSD, and personality disorder not otherwise specified. (*Id.*). Dr. Meyer stated that, in a work setting, Plaintiff would be able to perform simple as well as "some complex routine tasks." (*Id.*, Tr. 554, PAGEID #: 596). Dr. Meyer also opined that Plaintiff could perform in a setting without strict production quotas, with assistance as needed when performing new tasks. (*Id.*). Additionally, Dr. Meyer opined that Plaintiff would be able to perform in a nonpublic work setting with occasional interactions with coworkers and supervisors, and could withstand the

6

stress and pressures of a low-stress work setting, with assistance as needed to adjust to changes in routine. (*Id.*, Tr. 555, PAGEID #: 597).

From June to September 2013, Plaintiff met with state agency psychologists, including Dr. Zeune and Dr. Johnston, for her disability determination and then reconsideration of her disability determination. (Doc. 10-3, Tr. 151–82, PAGEID #: 189–220). Dr. Johnston found that Plaintiff could perform simple repetitive tasks in settings where the pace is not fast, and she was not significantly limited in her ability to work in coordination with or proximity to others without being distracted by them. (*Id*., Tr. 160, PAGEID #: 198). Dr. Zeune determined that Plaintiff could maintain attention sufficiently to complete simple tasks, as well as "some more detailed 3-4 step tasks in settings where the pace is not fast." (Doc. 10-3, Tr. 177, PAGEID #: 215). Dr. Zeune also opined that Plaintiff would benefit from a flexible work schedule depending on the severity of her symptoms. (*Id.*).

On April 7, 2014, Plaintiff began counseling at Six County Medical Health Center. (Doc. 10-8, Tr. 610, PAGEID #: 653). Plaintiff's speech was noted as loud, and eye contact was poor at times; however, she appeared oriented to the time, place, and her person, and both her intellectual functioning and perceptions were noted as unremarkable. (*Id.*, Tr. 616–17, PAGEID #: 659–60). She was diagnosed with adjustment disorder with mixed anxiety and depressed mood. (*Id.*, Tr. 621, PAGEID #: 664). In July 2014, however, Plaintiff reported relief from her symptoms of depression after she began taking medicine. (*Id.*, Tr. 631–32, PAGEID #: 674–75). She reiterated that her medication was helping again in September 2014. (*Id.*, Tr. 634, PAGEID #: 677).

From July 2014 to April 2015, Plaintiff was examined by Dr. Roger Balogh, a neurologist with a secondary specialty in psychiatry, for pharmacological management. (*Id.*, Tr.

641–96, PAGEID #: 684–739). Dr. Balogh frequently observed that Plaintiff's speech was regular with no abnormal associations (*Id.*, Tr. 644–92, PAGEID #: 687–735); Plaintiff's thought processes were clear and linear (*id.*, Tr. 652–92, PAGEID #: 695–735); Plaintiff was under no overt delusions (*id.*, Tr. 644–92, PAGEID #: 687–735); Plaintiff was oriented to time, place, and person (*id.*, Tr. 644–92, 793, PAGEID #: 687–735, 836); Plaintiff's judgment and insight were intact (*id.*); Plaintiff suffered no apparent impairment to recent and remote memory (*id.*, Tr. 645–92, 793, PAGEID #: 688–735, 836); and her mood and affect were appropriate to the situation (*id.*, Tr. 653–85, PAGEID #: 696–728). However, Dr. Balogh also took note of Plaintiff's impaired attention span and concentration, and that she was easily distracted. (*Id.*, Tr. 645–77, 793, PAGEID #: 688–720, 836).

On April 23, 2015, Dr. Balogh completed an evaluation form regarding Plaintiff's ability to perform work-related activities. (Doc. 10-7, Tr. 577–78, PAGEID #: 619–20). Dr. Balogh opined that Plaintiff would be "unable to meet competitive standards" in the following categories: maintaining attention for two-hour segments; working in coordination with proximity to others without being unduly distracted; and completing a normal workday and workweek without interruptions from psychologically-based symptoms. (*Id.*). Dr. Balogh further opined that Plaintiff would be "seriously limited" in the following categories: performing at a consistent pace without an unreasonable number and length of rest periods; accepting instructions and responding appropriately to criticism from supervisors; getting along with peers without unduly distracting them or exhibiting behavioral extremes; responding appropriately to changes in a routine work setting; dealing with normal work stress; understanding and remembering detailed instructions; carrying out detailed instructions; and dealing with the stress of semiskilled and skilled work. (*Id.*). Dr. Balogh explained that his restrictive findings were based on Plaintiff's

8

anxiety, poor concentration, mood swings, and complaints of significant pain. (*Id.*, Tr. 578, PAGEID #: 620). He further offered that Plaintiff would be absent more than four days per month. (*Id.*).

Plaintiff saw Dr. Balogh again on June 18, 2015. (Doc. 10-8, Tr. 796, PAGEID #: 840). During this visit, Dr. Balogh noted that Plaintiff's speech was rapid and her associations were loose. (*Id.*, Tr. 799, PAGEID #: 842). Although Plaintiff's thought processes were clear and she was described as "oriented to time/place/person," Plaintiff reported visual and auditory hallucinations. (*Id.*, Tr. 799–800, PAGEID #: 842–43). Further, Plaintiff's mood and affect were labile, and her attention span was impaired. (*Id.*, Tr. 800, PAGEID #: 843).

**D. Relevant Portions of the ALJ's Decision**

The ALJ found that Plaintiff last met the insured status requirements of the Social Security Act on June 30, 2016, and she had not engaged in substantial gainful activity during the period from her alleged onset date of June 5, 2012 through her date of last insured of June 30, 2016. (Doc. 10-2, Tr. 107, PAGEID #: 144). The ALJ concluded that Plaintiff had numerous severe impairments, consisting of degenerative disc disease of the lumbar spine, obesity, mood disorder, and PTSD. (*Id.*). Despite these findings, the ALJ held that none of Plaintiff's impairments or combination of impairments met or equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (*Id.*, Tr. 111, PAGEID #: 148).

As to Plaintiff's residual functional capacity ("RFC"), the ALJ found Plaintiff could perform light work as defined in 20 CFR § 404.1567(b), with the following limitations:

> [U]nderstanding, remembering, and carrying out simple repetitive tasks, maintaining concentration and attention for two hour segments during an eight hour workday, able to respond appropriately to supervisors and co-workers in a task oriented setting, have casual and infrequent contact with others, and able to adapt to simple changes and avoid hazards in a setting without strict production quotas.

(*Id.*, Tr. 114, PAGEID #: 151). The ALJ also determined that Plaintiff was capable of performing past relevant work as a pottery spray gun striper, which would not require the performance of work-related activities precluded by Plaintiff's RFC. (*Id.*, Tr. 119, PAGEID #: 156). Ultimately, the ALJ determined that, "considering the claimant's age, education, work experience, and residual functional capacity, there are other jobs that exist in significant numbers in the national economy that the claimant can also perform." (*Id.*). Thus, he found that Plaintiff was not under a disability as defined in the Social Security act at any time from the alleged onset date of June 5, 2012 through August 29, 2015. (*Id.*, Tr. 121, PAGEID #: 158).

In making this determination, specifically with respect to Plaintiff's mental functioning, the ALJ declined to give controlling weight to the opinion of Dr. Balogh, Plaintiff's treating physician, and provided several reasons for doing so. (*Id.*, Tr. 116, PAGEID #: 153). First, the ALJ found that Dr. Balogh's check marks were conclusory and accompanied by only two sentences, which stated Plaintiff's symptoms. (*Id.*). Second, the ALJ found that Dr. Balogh's opinion was unsupported by the record, including Dr. Balogh's own examinations, which revealed clear thought processes, regular speech, and no delusions. (*Id.*). Moreover, while Dr. Balogh stated that immediate recall and attention span were impaired, he did not note to what extent. (*Id.*). Finally, the ALJ found that Dr. Balogh appeared to have based his opinions "in large part" on Plaintiff's symptoms, and that Plaintiff's assertions regarding her physical symptoms were "not entirely credible." (*Id.*).

Similarly, with regard to Plaintiff's physical impairments, the ALJ declined to give controlling weight to the report prepared by PA Tami Mohan that was signed by Dr. Kocoloski and Plaintiff's physical therapist. The ALJ first explained that Plaintiff's X-rays showed, at most, "mild degenerative changes and few abnormal neurological examinations." (*Id.*, Tr. 115,

10

PAGEID #: 152). Additionally, the PA assessment noted that Plaintiff had complained of cervical, thoracic, and lumbar pain, causing the ALJ to believe that the assessment was based, at least partially, on Plaintiff's subjective complaints. (*Id.*). The ALJ also considered the fact that neither a PA nor a physical therapist are considered medical sources under 20 CFR § 404.1513, and noted that it was unclear whether Dr. Kocoloski "reviewed the claimant's chart to agree with other sources limitations, or . . . just rubber stamp[ed] the assessment." (*Id.*).

## II. LEGAL STANDARD

Under 42 U.S.C. § 405(g), "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)). The Commissioner's findings of fact must also be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). To that end, the Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *Rhodes v. Comm'r of Soc. Sec.*, No. 2:13-cv-1147, 2015 WL 4881574, at *2 (S.D. Ohio Aug. 17, 2015).

## III. DISCUSSION

In her Statement of Specific Errors, Plaintiff alleges that (1) the ALJ erred in failing to give controlling weight to the opinion of Dr. Balogh, a treating physician, and (2) substantial evidence does not support the ALJ's RFC determination. (*See generally* Doc. 11).

### A. Substantial Evidence Supports the ALJ's Decision Not to Defer to Plaintiff's Treating Source Opinions

Two related rules govern how an ALJ is required to analyze a treating physician's

11

opinion. *Dixon v. Comm'r of Soc. Sec.*, No. 3:14-cv-478, 2016 WL 860695, at *4 (S.D. Ohio Mar. 7, 2016). The first is the "treating physician rule." *Id.* The rule requires an ALJ to "give controlling weight to a treating source's opinion on the issue(s) of the nature and severity of the claimant's impairment(s) if the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record." *LaRiccia v. Comm'r of Soc. Sec.*, 549 F. App'x 377, 384 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527(c)(2)) (internal quotation marks omitted). Closely associated is "the good reasons rule," which requires an ALJ always to give "good reasons . . . for the weight given to the claimant's treating source opinion." *Dixon*, 2016 WL 860695, at *4 (quoting *Blakely*, 581 F.3d at 406 (alterations in original)); 20 C.F.R. § 404.1527(c)(2). The treating physician rule and the good reasons rule together create what has been referred to as the "two-step analysis created by the Sixth Circuit." *Allums v. Comm'r of Soc. Sec.*, 975 F. Supp. 2d 823, 832 (N.D. Ohio 2013).

Here, the ALJ declined to give controlling weight to Dr. Balogh because his opinion failed to provide any additional analysis beyond two sentences that merely restated Plaintiff's symptoms. An ALJ "is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation." *Cohen v. Sec'y of HHS*, 964 F.2d 524, 528 (6th Cir. 1992) (citing *King v. Heckler*, 742 F.2d 968, 972–73 (6th Cir. 1984)). Additionally, the ALJ determined that the Plaintiff's assertions of her symptoms lacked credibility. Because the ALJ determined that Plaintiff's "assertions regarding her pain and physical symptoms are not entirely credible," the ALJ examined the record to find support for Dr. Balogh's restrictive opinion beyond Plaintiff's symptoms. (Doc. 10-2, Tr. 116, PAGEID #: 153). Upon finding a plethora of contradictory opinions and inconsistent medical records—

including Dr. Balogh's own examination notes—the ALJ determined that Dr. Balogh's April 2015 opinion was not entitled to controlling weight. *See, e.g., Payne v. Comm'r of Soc. Sec.*, 402 F. App'x 109, 112–13 (6th Cir. 2010) (affirming an ALJ's decision to give less than controlling weight to a treating physician where the physician's opinions were inconsistent with substantial evidence in the record, including the physician's own treatment notes).

For example, although Dr. Balogh opined that Plaintiff would be "unable to meet competitive standards" in completing a normal workday and workweek without interruption from psychologically based symptoms, his examinations consistently revealed clear thought processes, regular speech, no delusions, intact judgment, no impairment to memory, and appropriate moods. (Doc. 10-8, Tr. 641–96, PAGEID #: 684–739). Additionally, Dr. Dubey's May 2013 examination, to which the ALJ gave some weight, indicated that Plaintiff's speech was coherent, her thought processes were logical, she did not need simple or multi-part questions repeated, and she did not appear to have difficulty with comprehension. (Doc. 10-7, Tr. 535–40, PAGEID #: 577–82; Doc. 10-8, Tr. 115–16, PAGEID #: 152–53). Dr. Meyer's August 2013 assessment, to which the ALJ gave substantial weight, noted that Plaintiff's thought processes were well-organized, she displayed no signs or symptoms of a formal thought disorder, and her concentration and persistence were good. (Doc. 10-7, Tr. 550–53, PAGEID #: 592–95). Similarly, the state agency psychologists found that Plaintiff could perform some work, and was capable of carrying out simple tasks in addition to more detailed, three-to-four-step instructions where the pace was not fast. (Doc. 10-3, Tr. 151–82, PAGEID #: 189–220). The ALJ based the mental limitations in Plaintiff's RFC "in large part" on the opinions of the state agency psychologists. (Doc. 10-8, Tr. 115, PAGEID #: 152).

Plaintiff nevertheless argues that Dr. Balogh's opinions are well-supported by the

evidence of the record, including the opinions of Plaintiff's other examining and non-examining professionals. (Doc. 11, Tr. 9, PAGEID #: 991). Specifically, Plaintiff relies on her medical records documenting her bipolar disorder, personality disorder, adjustment disorder, depression, anxiety, PTSD, and mood disorder. (*Id.*). She also maintains that "[a]ll of the limitations set forth by the consultative and state agency psychologists support the findings of" Dr. Balogh. (*Id.*, Tr. 10, PAGEID #: 992). The Commissioner contends that "other opinion evidence supports the ALJ's rejection of Dr. Balogh's April 2015 opinion." (Doc. 12, Tr. 6, PAGEID #: 1007). The undersigned agrees with the Commissioner.

Here, the ALJ acknowledged that Plaintiff suffered from such conditions as mood disorder, depression, and PTSD. (Doc. 10-2, Tr. 107, 118, PAGEID #: 144, 155). Even so, under the substantial evidence standard, the ALJ's findings are "not subject to reversal merely because substantial evidence exists in the record to support a different conclusion." *Mixon v. Colvin*, 12 F. Supp. 3d 1052, 1064 (S.D. Ohio 2013) (citing *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1996)). Rather, it is the ALJ's "function to resolve conflicts in the evidence, *see Hardaway v. Sec'y of H.H.S.*, 823 F.2d 922, 928 (6th Cir. 1987)," as the ALJ did here. *Id.*

Moreover, it is for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) (citing references omitted). However, such credibility determinations must find support in the record. *Id.* While the ALJ noted that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," the ALJ also found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible," and cited objective evidence in claimant's medical records,

as well as a number of "inconsistencies and exaggerations in the record," in support of that finding. (Doc. 10-2, Tr. 118–19, PAGEID #: 155–56).[1]

In one example, Plaintiff reported 10 out of 10 pain, despite exhibiting no signs of acute distress and a lack of objective evidence indicating such severe pain. (Doc. 10-8, Tr. 705, PAGEID #: 748). In another, Dr. Weaver noted that, for manual muscle testing, Plaintiff displayed "ratchety inconsistency" with "giving way" in the left shoulder muscles and left knee muscles (Doc. 10-7, Tr. 527, PAGEID #: 569), which the ALJ noted are "indicators of possible malingering." (Doc. 10-2, Tr. 118, PAGEID #: 155). The ALJ also noted that Plaintiff's medical records—such as X-rays that showed only mild disc disease—did not indicate the presence of an impairment "capable of producing severe, intractable levels of pain, fatigue, or other symptoms that would preclude all work activity." (*Id.*). Accordingly, substantial evidence supports the ALJ's credibility determination.

Without Plaintiff's subjective complaints, the ALJ reasonably found that Dr. Balogh's opinion was not supported by the record. Indeed, as to Plaintiff's mental abilities, Dr. Dubey opined that Plaintiff would be able to understand, remember, and carry out simple instructions, and would only have mild issues dealing with others and work pressures. Dr. Meyer likewise found that Plaintiff would be able to carry out simple instructions, as well as withstand occasional interactions with coworkers and the pressures of a low-stress work setting with occasional assistance.

---

[1] Under SSR 16-3p, which was effective on March 28, 2016, an ALJ must focus on consistency of an individual's statements about the intensity, persistence and limiting effects of symptoms, rather than credibility. *Compare* SSR 96-7p, 1996 SSR LEXIS 4, *with* SSR 16-3p, 2016 SSR LEXIS 4. While courts have disagreed as to whether the regulation applies retroactively, the Court need not resolve the issue because under either lens—credibility or consistency—the Court finds that the ALJ analyzed the record appropriately. *See Barncord v. Comm'r of Soc. Sec.*, No. 2:16-cv-389, 2017 U.S. Dist. LEXIS 151479, at *10–12. (June 30, 2017) (affirming recommendation that the Court need not resolve the retroactivity issue).

Finally, Plaintiff argues that even if Dr. Balogh's opinion was *not* entitled to controlling weight, the ALJ was required to evaluate Plaintiff's treating source opinion by considering the five factors set forth in *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) and 20 C.F.R. § 404.1527(c)(2)–(6): the length, nature, and extent of the treatment relationship between Plaintiff and Dr. Balogh; the frequency of examination; Dr. Balogh's medical specialty; the extent to which Dr. Balogh's opinion is supported by the evidence; and the consistency of Dr. Balogh's opinion with the record as a whole. (Doc. 11, Tr. 11, PAGEID #: 993). While an ALJ must *consider* the factors set forth in 20 C.F.R. § 404.1527(c)(2)–(6), the regulations only require that the ALJ's decision include good reasons for the weight assigned to the treating source, *see* 20 C.F.R. § 404.1527(c)(2), "not an exhaustive factor-by-factor analysis." *Francis v. Comm'r Soc. Sec.*, 414 F. App'x 802, 804 (6th Cir. 2011).

Here, the ALJ's findings of fact included an overview of the length, nature, and extent of the treatment relationship between Plaintiff and Dr. Balogh; the frequency of Dr. Balogh's examinations of Plaintiff; and Dr. Balogh's specialty as a neurologist with a secondary specialty in psychiatry. (Doc. 10-2, Tr. 109–11, PAGEID #: 146–48). Thus, it is clear the factors were appropriately considered. Moreover, in assigning little weight to Dr. Balogh's opinion, the ALJ cited the opinion's lack of support by the evidence of record, and inconsistency with Dr. Balogh's examination records. "Procedurally, the regulations require no more." *Francis*, 414 F. App'x at 805.

In light of the following, the ALJ's decision to reject Dr. Balogh's opinion was supported by substantial evidence and provided sufficient detail to satisfy the good-reasons requirement. *See Barncord v. Comm'r of Soc. Sec.*, No. 2:16-CV-389, 2017 U.S. Dist. LEXIS 102081, 2017 WL 2821705, at *6 (S.D. Ohio June 30, 2017).

## B. Substantial Evidence Supports Plaintiff's RFC

Plaintiff also challenges the ALJ's RFC determination and argues that it was made in the face of contradictory evidence from the examining and treating physicians of record. (Doc. 11, Tr. 14, PAGEID #: 996). Plaintiff also argues that the ALJ's rationale in discrediting the assessment completed by PA Tami Mohan and co-signed by Dr. Kocoloski and her physical therapist is not supported by substantial evidence. (*Id.*).

A plaintiff's RFC "is defined as the most a [plaintiff] can still do despite the physical and mental limitations resulting from her impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. §§ 404.1545(a), 416.945(a). The determination of RFC is an issue reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e), 416.927(e). Nevertheless, substantial evidence must support the Commissioner's RFC finding. *Berry v. Astrue*, No. 1:09CV000411, 2010 WL 3730983, at *8 (S.D. Ohio June 18, 2010). To assist in RFC determinations, the Commissioner considers physical exertional requirements and "classif[ies] jobs as sedentary, light, medium, heavy, and very heavy." 20 C.F.R. §§ 404.167, 416.967. The regulations define light work as:

> [L]ifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. §§ 404.167(b), 416.967(b). The ALJ, not a physician, ultimately determines a claimant's RFC. 42 U.S.C. § 423(d)(5)(B). *See also Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 578 (6th Cir. 2009). And it is the ALJ who resolves conflicts in the medical evidence. *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984).

In considering Plaintiff's RFC, the ALJ declined to give controlling weight to Ms. Mohan's assessment because it lacked any explanation for its restrictive conclusions other than a restatement of Plaintiff's reported symptoms. Because the ALJ properly found that Plaintiff was not a credible source, as mentioned above, and because both Dr. Kocoloski and Plaintiff's physical therapist failed to provide additional insight, the ALJ looked to the record for support. Noting a "paucity of positive findings" regarding Plaintiff's physical impairments, the ALJ declined to give the PA assessment controlling weight. (Doc. 10-2, Tr. 114–15, PAGEID #: 151–52). The ALJ identified several appropriate reasons for assigning minimal weight to the assessment. For one, the ALJ observed that both Ms. Mohan and Plaintiff's physical therapist are not acceptable medical sources as defined in the regulations. *See* 20 C.F.R § 404.1513. As such, their opinions are not entitled to controlling weight. *See* SSR 06-03p; 20 C.F.R § 404.1527(c). Even so, the ALJ considered the assessment in accordance with the guidance in SSR 06-03p. In particular, he considered the consistency of the PA assessment with other evidence of record and the extent to which the assessment was explained and supported. *See* SSR 06-03p.

The ALJ observed that Plaintiff's X-rays showed, at most, mild degenerative changes and few abnormal neurological examinations. (Doc. 10-2, Tr. 115, PAGEID #: 152). The ALJ also stated that the PA assessment appeared based, at least partially, on Plaintiff's subjective complaints, and that the Plaintiff's assertions were not credible. (*Id.*). The ALJ ultimately assigned minimal weight to the PA assessment based on a lack of support by the evidence of record. (*Id.*). Such a conclusion was within the ALJ's discretion. *See* 20 C.F.R. § 404.1527(c)(2); *see also Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 506–07 (6th Cir. 2006).

The ALJ ultimately concluded that Plaintiff was capable of light work with additional mental limitations, citing 20 C.F.R. § 404.1567(b). (Doc. 10-2, Tr. 114, PAGEID #: 151). When looking at the record, X-rays of Plaintiff's spine and joints showed only minimal to mild degenerative changes, and a recent MRI of her lumbar spine revealed only decreased disc height with disc bulges, but no stenosis. (*Id.*). Moreover, other clinical examinations demonstrated no neurological deficits, no weakness (and thus no need for any ambulatory aid), no significant gait abnormality, and only intermittent limitation of motion. (*Id.*). The ALJ also noted that Plaintiff goes shopping, takes care of her children and pets, drives, sees friends, runs errands, and uses the computer to keep in touch with her loved ones and to play games. (*Id.*, Tr. 118, PAGEID #: 155).

With this evidence in mind, the Court finds the ALJ did not err in assigning minimal weight to Ms. Mohan's assessment, and the ALJ's ultimate conclusion regarding Plaintiff's physical abilities finds support in the record. It is not this Court's role to sift through the facts and make a *de novo* determination of whether a claimant is disabled. Indeed it is the ALJ, not the Court, that is the finder of fact. *Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). The ALJ reasonably undertook that role here. *Id.* Because substantial evidence supports the decision below, it must be affirmed.

IV. **CONCLUSION**

For reasons stated, it is **RECOMMENDED** that the Plaintiff's statement of errors be **OVERRULED** and that judgment be entered in favor of Defendant.

V. **PROCEDURE ON OBJECTIONS**

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those

specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1). Failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140, 152–53 (1985).

    IT IS SO ORDERED.


Date: October 26, 2017                                            /s/ Kimberly A. Jolson
                                                                          KIMBERLY A. JOLSON
                                                                          UNITED STATES MAGISTRATE JUDGE